IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JENNIFER CHURCHILL,**<br>    a/k/a "Jennifer Nukul"<br><br>            Defendant. | Case No. 1:12-CR-00038<br><br>The Honorable Leonie M. Brinkema<br><br>Trial Date:  June 18, 2012<br>Motions Hearing:  June 6, 2012 |

**DEFENDANT CHURCHILL'S MOTION AND
INCORPORATED MEMORANDUM OF LAW TO COMPEL DISCOVERY**

Pursuant to Federal Rules of Criminal Procedure 12 and 16, Defendant Jennifer Churchill, through undersigned counsel, respectfully moves the Court to compel the Government immediately to produce to the defense copies of all electronic data seized from her home, and all other discovery not yet produced to the defense as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Agurs*, 427 U.S. 97 (1976).  The reasons for this request are set forth below.

**BACKGROUND**

On January 26, 2012, FBI agents executed a search and seizure warrant at Ms. Churchill's home in Irvine, California.  Among other tangible items, agents seized multiple hard drives, CD's, DVDs, digital memory cards, cameras, cell phones, an iPad, and a laptop computer.

Undersigned counsel substituted as counsel on behalf of Ms. Churchill on February 22, 2012.  Beginning at least in early March 2012, defense counsel began requesting discovery from the government.  Defense counsel specifically sought copies of the myriad electronic data the government seized from Ms. Churchill's home, and repeatedly offered to provide and deliver to

the government the necessary hardware (*e.g.*, CD's, an external hard drive, etc.) for obtaining copies of this data.

On March 9, 2012, the Court entered a consent discovery order pertaining to Ms. Churchill. *See* Doc. No. 79. On March 27, 2012, the government produced through its legal assistant six (6) CD's containing information relating to the above-captioned matter. Undersigned counsel discussed with the legal assistant the contents of the CD's and determined that none of the CD's contained data seized from Ms. Churchill's home. Defense counsel reiterated her offer to provide the necessary hardware to obtain copies of the data, and the legal assistant asked whether the defense would be able to send someone with a hard drive the next day. Defense counsel answered affirmatively, but said we first needed to know where to send the hard drive and how much capacity to send. A short time later, undersigned counsel e-mailed government counsel reiterating that the defense would do whatever was necessary to provide the hardware the government needed to make copies of Ms. Churchill's data. Because undersigned counsel was expecting to be out of the office the next day (March 28th), she provided contact information for her colleague, Christopher Smith. Neither undersigned counsel nor Mr. Smith received a call or e-mail from the government.

On April 3, 2012, undersigned counsel e-mailed the government to suggest an in-person meeting regarding this case. In that e-mail, undersigned counsel noted that she would be out of town the week of April 16, 2012.

On Wednesday, April 4, 2012, undersigned counsel met with counsel for the government. During that meeting, government counsel stated that agents in California had finished copying the data seized from Ms. Churchill's home and sent it to Virginia. Defense counsel reiterated her

offer to provide to the government, within one business day, the hardware necessary to make a copy of that imaged data for the defense.

On Friday, April 6, 2012, government counsel called defense counsel and said Ms. Churchill's data, which had been copied by agents in California, was in Manassas. The agents either did not know or had not communicated to government counsel the total capacity of the data, so government counsel offered that the defense could either (a) review all of this data on-site at a government facility, or (b) provide a very large capacity hard drive, such as a three-terabyte drive, which government counsel estimated would cost around $1,000. Undersigned counsel said that an on-site review was not reasonable or practical given the nature and volume of material. Undersigned counsel further said that given the apparent high cost of a three-terabyte drive, the defense would prefer if the agents simply told government or defense counsel the actual capacity required so the defense did not have to spend money on a larger-capacity hard drive than was needed. Government counsel offered to ask the agents the capacity of the data on Monday, April 9th. Undersigned counsel reminded government counsel that she would be out of town the week of April 16th and expressed her desire that this issue be resolved before then.

Also on Friday, April 6th, the government informed the defense there was a package of discovery available for pickup at the U.S. Attorney's Office. Undersigned counsel immediately sent someone to pick up the materials, which consisted of 23 CDs and 16 DVDs of data. This data included over 70,000 emails, logs of text messages spanning over 7,000 pages, and recorded telephone conversations. None of these disks contained the data seized from Ms. Churchill's home.

Having not heard from the government, on Monday, April 9, 2012 at 2:38 p.m., undersigned counsel e-mailed government counsel regarding the capacity of the electronic data

seized from Ms. Churchill's home. Before the close of business, undersigned counsel also telephoned government counsel to ask about the data. The government then advised that the agents in Manassas had not yet told government counsel the capacity of the data.

On April 10, 2012 at 3:09 p.m., undersigned counsel again e-mailed the government about obtaining copies of the electronic data seized from Ms. Churchill's home. Defense counsel said she had learned a three-terabyte drive should not be as expensive as the government estimated, and expressed her willingness to provide a hard drive of that capacity if the delay was due to the agents' inability to determine the actual capacity needed. Defense counsel also left a voicemail for government counsel with this same information, and again reminded the government that she would be out of the office the next week (April 16-20) and hoped to resolve the issue by the next morning to avoid further delay.

Having received no response, on April 11, 2012, undersigned counsel sent a letter via e-mail and priority overnight U.S. mail to the government. In this letter, defense counsel (1) again requested copies of the electronic data seized from Ms. Churchill's home; (2) requested other discovery, including *Brady* material, to the extent it had not been provided; and (3) enclosed a check requested by the government on April 6, 2012 to reimburse the government for the electronic discovery produced to date. *See* Exhibit A, attached. Although the government's legal assistant kindly e-mailed defense counsel to confirm receipt of the check, defense counsel received no substantive response to the discovery requests in the letter.

Having still heard nothing from the government in response to repeated e-mails, voicemails and her April 11, 2012 letter, on April 17, 2012, undersigned counsel again e-mailed government counsel and expressed her willingness to purchase more capacity than is necessary if the production delay was due to the agents' inability to determine the total capacity of data that

4

would need to be copied. Undersigned counsel again asked where the hard drive should be sent, and requested the name of a contact person in Manassas to confirm their availability to make the copies and to discuss making the copies while counsel waited. Because undersigned counsel was out of town, the email repeated Mr. Smith's contact information to coordinate obtaining the copies.

As of the filing of this motion on the evening of April 23, 2012, the defense has not received a response from the government, and has not received this discovery.

## ARGUMENT

Federal Rule of Criminal Procedure 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . data, photographs, tangible objects, . . . or copies or portions of any of these items, if the item is within the government's possession, custody or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

There can be no question that the data at issue was obtained from and belongs to Ms. Churchill, as it was seized pursuant to a warrant directly from her home in California. Moreover, as the government recognizes, "[t]he main issue at trial will be the defendant's guilty knowledge." Government's Response in Opposition to Defendants' Motion for Severance, Doc. 111, at p. 4. Thus far, the discovery produced in this case reflects that Ms. Churchill had <u>no actual knowledge</u> of the allegedly unlawful nature of Classy DC Escorts' business. In that vein, the government represented to the defense during their April 4, 2012 meeting that the government's evidence of Ms. Churchill's knowledge is inferential. Clearly, Ms. Churchill's own electronic data will be material to her knowledge or lack thereof regarding the lawful or unlawful nature of the Classy DC Escorts business. The data seized from her home, including

data on her cell phones, laptop, iPad and other electronic devices, is unquestionably material to preparing her defense.

The agreed discovery order entered by the Court obligates the government to produce this information no later than seven days prior to trial, "unless for good cause shown." Here, there is good cause to require the government to produce this material forthwith. Given the sheer number of electronic items the FBI seized from Ms. Churchill's home, the defense expects that a substantial amount of data will have been imaged from those items. This volume of data, particularly in the form of e-mails, text messages and other text-heavy documents (as opposed to images) takes a significant amount of time to review. Trial in this case is set for June 18, 2012, a mere eight weeks away. This data – which is the evidence most material to Ms. Churchill's defense in this case – has been in the possession, custody and control of the government since January 26, 2012 when it was seized from Ms. Churchill's home. The defense requested this information at least as early as March 6, 2012. It is unclear why it took the government over two months to image the data, but we now know the government has had the imaged data in Manassas since at least April 6, 2012. There is no reason whatsoever that this data cannot be copied and immediately produced to the defense, particularly in light of the defense's repeated offers to hand-deliver an over-capacity hard drive and wait for the copying to be completed, which even alleviates the government's responsibility to mail back the completed copy.

As detailed herein, the defense has made repeated good faith efforts to obtain this data, to which the defense is entitled, without the need for litigation. As those efforts have been unsuccessful, the defendant asks that this Court order the government to immediately produce copies of this data to the defense.

Finally, this Court's order and the Supreme Court's rulings in *Brady* and *Agurs* make clear that the government must promptly produce exculpatory material to the defense. As explained in defense counsel's April 11, 2012 letter (Exhibit A), the defense expects that exculpatory material is contained within the electronic data seized from Ms. Churchill's home, as well as other documents, photographs, papers and tangible objects seized from her home and other evidence in the possession, custody and control of the government that has not yet been produced to the defense. With this motion, the defense requests that the government be ordered to promptly produce *Brady* material, as well.

A Proposed Order is filed contemporaneously herewith.

Dated: April 23, 2012	Respectfully submitted,

        /s/
Kerri L. Ruttenberg, Va. Bar No. 70274
Christopher J. Smith, Va. Bar No. 75445
Attorneys for Defendant Jennifer Churchill
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939 (Telephone)
(202) 626-1700 (Fax)
kruttenberg@jonesday.com
cjsmith@jonesday.com

## CERTIFICATE OF SERVICE

I hereby certify that this 23rd day of April, 2012, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to the following counsel of record:

Stuart Alexander Sears, Esq.
Zwerling Leibig & Moseley PC
114 North Alfred Street
Alexandria, VA 22314
*Counsel for Kuraye Akuiyibo*

Nina J. Ginsberg, Esq.
DiMuro Ginsberg PC
1101 King Street, Suite 610
Alexandria, VA 22314-2956
*Counsel for Otasowie Asuen*

Ronald L. Hiss, Esq.
2020 N. 14th Street, Suite 510
Arlington, VA 22201
*Counsel for Alafaka Opuiyo*

Christopher Bowmar Mead, Esq.
Lance Alan Robinson, Esq.
London & Mead
1225 19th Street NW, 17th Floor
Washington, DC 20036
*Counsel for Nassim Tabatabai*

Denise Jakabcin Tassi, Esq.
221 S. Fayette Street
Alexandria, VA 22314
*Counsel for Kiana McKelvin*

　　　　　　　　/s/
Kerri L. Ruttenberg
Attorney for Defendant Jennifer Churchill