# EXHIBIT A

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-5419
kruttenberg@JonesDay.com

April 11, 2012

VIA E-MAIL AND PRIORITY OVERNIGHT MAIL

Kimberly Riley Pedersen, Esq.
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

Re: U.S. v. Jennifer Churchill, Case No. 1:12-CR-00038

Dear Ms. Pedersen:

Thank you for the discovery you have produced thus far in this case. In addition, I appreciate your efforts to orchestrate my getting copies of the electronic data seized from my client's home in California. As you have noted during our various communications about this issue, the amount of data is substantial – a fact also reflected in the Receipt for Property Seized (dated January 26, 2012), which reflects that, *inter alia*, multiple hard drives, CD's, DVDs, cameras, cell phones, an iPad, and a laptop computer were seized from Ms. Churchill's home. Given the volume and potential materiality of this data to the defense in this case, I have been and continue to seek immediate production of this data, which I understand has already been copied and is in the government's possession in Virginia.

In particular, from our discussions last week and earlier this week, I understand that FBI agents in Manassas now have in their possession all of the data that was copied from Ms. Churchill's various devices, and thus producing it to the defense is simply a matter of copying that data onto a separate device. As I've offered since I came into this case in mid-February, I will purchase and provide to you or your designee whatever device is necessary (*e.g.*, an external hard drive) of sufficient capacity to copy this data for the defense. Given cost considerations, I asked you to let me know the needed capacity of the device, and I'll have the device purchased and delivered within one business day.

When we met on April 4th, it was my understanding that government agents in California had finished copying the data and sent it to Virginia, where it was either en route or had arrived that day. When we spoke on Friday, April 6th, you kindly called me to let me know the data was in Manassas and that I could provide a hard drive for copying the data. At that time, the agents either did not know or had not communicated to you the total capacity of the data, so you offered me two options. One was to provide a very large capacity hard drive that you estimated would cost me around $1000. The second option was for me to review all of this data on-site in a government facility. The latter option was not a reasonable one from my perspective, given the

JONES DAY

Kimberly Riley Pedersen, Esq.
April 11, 2012
Page 2

nature and volume of the material. The former option was possible, but given the high cost I asked that we instead ask the agents for the actual capacity of the data so I did not have to unnecessarily spend money for more capacity than we needed. You offered to ask the agents on Monday, April 9th to let us know the capacity of the data, but unfortunately they had not communicated this information to you by the end of the day Monday when I called. I e-mailed you again yesterday to see if we have any information yet, but I have not heard from you.

     I remain hopeful that I will have an answer early tomorrow, as I need to organize on my end purchasing the right capacity drive and getting it to Manassas. And, as I've told you, I am out of the office next week and trying to avoid a further delay. I'd also like to wait on premises for the material to be copied to avoid additional delay. As I mentioned in my voicemail yesterday, I'm even willing to spend more money than needed to give the agents a larger than necessary hard drive, but I do not want to send someone to Manassas without a contact person there and a commitment that someone will copy the material for me, preferably while I wait.

     I ask that you please let me know, tomorrow morning if at all possible, the capacity of the hard drive I need to provide and the name and phone number for a contact person in Manassas who I can coordinate with to obtain the copies. And, while we have not specifically discussed it, I would also like to obtain copies of the non-electronic property seized from Ms. Churchill's home in January as quickly as possible, which I assume also has been forwarded to Virginia from the agents in California.

     I also am writing to request that you make available to me all remaining unproduced materials and information which the government must disclose pursuant to the Federal Rules of Criminal Procedure, Federal Rules of Evidence, case law, and the Court's discovery order in this case. Ms. Churchill's full name is Jennifer Nukul Churchill. In each instance below where I reference my client as Jennifer Churchill, the request applies equally to my client as "Jennifer Nukul," the name listed as an alternative for "Jennifer Churchill" in the Indictment in this case. Similarly, where I reference "Classy DC Escorts," the request applies equally to variations on that name such as "Classy" or "Classy DC."

**(1) <u>Statements</u>**

    **(a) Jennifer Churchill's written or recorded statements (Fed. R. Crim. P. 16(a)(1)(B)).**

        (1) Please produce any relevant written or recorded statements by Ms. Churchill within the possession, custody or control of the government that are known to you, or through due diligence may become known. This request includes e-mails, text messages, recorded telephone calls, and other electronic statements Ms. Churchill made to other defendants or any other person pertaining to any topic relevant to this case, <u>including but not limited to</u> statements regarding, suggesting or concerning:

**JONES DAY**

Kimberly Riley Pedersen, Esq.
April 11, 2012
Page 3

      (i) Ms. Churchill's photo editing work for the business Classy DC Escorts or any other business or person;

      (ii) Ms. Churchill's knowledge or lack thereof regarding the alleged unlawful nature of the business Classy DC Escorts or any other business or person referenced in any documents pertaining to this case such as affidavits in support of search, seizure or Title III warrants;

      (iii) Ms. Churchill's modeling work for any business or person.

(2) Please produce any reference in any written record of any oral statement made before or after arrest by Ms. Churchill to a person known by her to be a government agent.

**(b) Ms. Churchill's oral statements (Fed. R. Crim. P. 16(a)(1)(A)).** The substance of any oral statements made by Ms. Churchill whether before or after interrogation by any person then known by her to be a government agent or law enforcement officer that the government intends to use in any manner at trial regardless of whether any written record of the statement exists. In the event the government intends to use such an oral statement at trial, I request that it be reduced to writing and produced. This request includes the substance of Ms. Churchill's response to *Miranda* warnings.

I request that, in responding to this request for Ms. Churchill's oral statements, you ask each law enforcement agency involved in investigating or prosecuting this case, whether in Virginia, California or elsewhere, to search its files for responsive information.

**(c) Ms. Churchill's prior record (Fed. R. Crim. P. 16(a)(1)(D)).** Please produce a copy of Ms. Churchill's criminal record within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known to you. This request includes Ms. Churchill's entire criminal record, including all arrests and offenses regardless of conviction or severity. It includes all matters that may affect Ms. Churchill's criminal history score under the United States Sentencing Guidelines.

**(2) <u>Documents, Data and Objects</u>**

    **(a) Material to preparing a defense (Fed. R. Crim. P. 16(a)(1)(E)(i)).** Please permit the inspection, copying or photographing of documents, data or tangible objects within the possession, custody or control of the government that are material to the preparation of the defense. Separately identify any materials the government intends to use at trial in its case in chief. Information material to preparation of the defense

JONES DAY

Kimberly Riley Pedersen, Esq.
April 11, 2012
Page 4

<u>includes but is not limited to</u> documents, data or objects that reflect, suggest or concern:

(1) Efforts by defendants or other persons to disguise, hide or otherwise not reveal the alleged unlawful nature of the business Classy DC Escorts or any other actual or planned business related to any other defendant, unindicted co-conspirator or witness in this case;

(2) The relationship or lack thereof between Ms. Churchill and (a) other defendants, (b) other persons associated with the business Classy DC Escorts, (c) the business Classy DC Escorts; and/or (d) any other actual or planned business related to any other defendant, unindicted co-conspirator or witness in this case; and

(3) Ms. Churchill's knowledge or lack thereof regarding the alleged unlawful nature of the business Classy DC Escorts and/or any other actual or planned business related to any other defendant, unindicted co-conspirator or witness in this case.

Additionally, please produce all images of the Classy DC Escorts web site that are within the possession, custody or control of the government, as the web site no longer appears to be active or accessible on the internet.

**(b) Material the government intends to use in its case-in-chief (Fed. R. Crim. P. 16(a)(1)(E)(ii)).** Please produce or otherwise make available all documents, data and tangible objects, including tape recordings and transcripts, which the government intends to use as evidence in its case-in-chief. In this regard, please produce any index or working exhibit list of items you intend to introduce at trial. Please provide notice of the government's intention to use any evidence in its case in chief discoverable under Rule 16 which the defense may seek to suppress. (Fed. R. Crim. P. 12(b)(4)(B)).

**(c) Obtained from or belonging to Ms. Churchill (Fed. R. Crim. P. 16(a)(1)(E)(iii)).** Please produce all materials obtained from or belonging to Ms. Churchill that are within the possession, custody or control of the government regardless of how they were obtained or the identity of the person who obtained them. This request of course includes the electronic data seized from Ms. Churchill's home, as we have been discussing and as noted above. In addition, this request includes the various non-electronic materials seized from her home (*e.g.*, item 12 on the property receipt dated January 26, 2012 listing "numerous photographic images"), and all other materials under this rule.

**(3) <u>Reports of Examinations and Tests (Fed..R. Crim. P. 16(a)(1)(F)).</u>** Please provide results or reports of physical or mental examinations and scientific tests or experiments within the

JONES DAY

Kimberly Riley Pedersen, Esq.
April 11, 2012
Page 5

possession, custody or control of the government or by the existence of due diligence may become known to you, and which are material to the preparation of the defense or are intended for use by the government as evidence in its case-in-chief at trial. In the event the results of any scientific tests were reported orally to you or to any government official or law enforcement officer, I request that you cause a written report of the results to be made and produced. In complying with this request, please contact any law enforcement agency involved in the investigation or prosecution of this case to determine whether relevant examinations or tests were conducted, and, if so, produce the results or reports.

(4) **Expert Witnesses (Fed. R. Crim. P. 16(a)(1)(G))**. In the event you intend to offer any expert testimony under the Federal Rules of Evidence through any witness, including a government agent or employee or law enforcement officer, I request that you prepare and produce a summary of the witness's opinion testimony, the grounds or basis for any such opinion testimony and the qualifications of the expert witness.

(5) **Other Offense Evidence (Fed. R. Evid. 404(b))**. I request notice of any "other offense" evidence you intend to introduce in your case-in-chief. At the time you identify any "other offense" evidence you intend to offer in rebuttal, please produce and identify such evidence separately.

(6) **Summary Witness or Charts (Fed. R. Evid. 1006)**. In the event you intend to call a summary witness at trial or present evidence in the form of a chart, I request production a reasonable time prior to trial of all of the original documents or tape recordings on which such testimony or chart is based.

(7) **Brady/Giglio Material**. Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), please produce sufficiently in advance of trial any exculpatory evidence material to guilt or punishment, including impeachment evidence or information. Should you have a question with regard to whether certain information constitutes *Brady/Giglio* material, or when it must be produced, I request that you present the information to the Court, with notice to me, for review *in camera* to resolve these issues.

This request includes but is not limited to documents, data, tangible objects and/or statements of other defendants or any other individuals in any form (*e.g.*, transcripts of grand jury testimony, statements made before or after arrest to government agents, statements made in e-mails or text messages, and oral statements whether recorded consensually or not, and regardless of whether any written or recorded record of the statement exists) within the possession, custody or control of the government that are known to you, or through due diligence may become known, that reflect, refer to, suggest, or otherwise concern:

   (a) Efforts by defendants or other persons to disguise, hide or otherwise not reveal the alleged unlawful nature of the business "Classy DC Escorts" or any other actual or

JONES DAY

Kimberly Riley Pedersen, Esq.
April 11, 2012
Page 6

        planned business related to any other defendant, unindicted co-conspirator or witness in this case;

   (b)   The relationship or lack thereof between Ms. Churchill and (i) other defendants, (ii) other persons associated with the business "Classy DC Escorts," (iii) the business "Classy DC Escorts;" and/or (iv) any other actual or planned business related to any other defendant, unindicted co-conspirator or witness in this case;

   (c)   Ms. Churchill's photo editing work for any business or person separate from the business "Classy DC Escorts;"

   (d)   Ms. Churchill's lack of knowledge regarding the alleged unlawful nature of the business "Classy DC Escorts" or any other actual or planned business related to any other defendant, unindicted co-conspirator or witness in this case;

   (e)   Ms. Churchill's modeling work for any business or person.

      If you believe that any *Brady/Giglio* material is also Jencks Act material, I request that you present it to the Court for *in camera* review and advise me of the general nature of the evidence. However, I request that you produce prior to trial all *Brady/Giglio* material not covered by the Jencks Act.

      Pursuant to your continuing duty to disclose information (Fed. R. Crim. P. 16(c)), immediately advise me of new information as it becomes available. If you have any questions regarding the nature of the requests contained in this letter, please contact me.

      Finally, per your request in your April 6, 2012 letter accompanying the second production of discovery materials in this case, I have enclosed a check payable to the United States Treasury in the amount of $132.00.

Regards,

Kerri L. Ruttenberg
Counsel for Jennifer Churchill

Enclosure (1)