IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CR. NO. 12-38 |
| vs. | ) |
| ALAFAKA PATIENCE OPUIYO, | ) |
| Defendant. | ) |

_____)

TRANSCRIPT OF SENTENCING

July 26, 2012

---

BEFORE:     THE HONORABLE LEONIE M. BRINKEMA
            UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT: OFFICE OF THE UNITED STATES ATTORNEY
                    BY: PATRICIA HAYES, ESQ.



FOR THE DEFENDANT:  RONALD L. HISS, ESQ.
                    GREGORY HUNTER, ESQ.



---

OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR,CRR
                         U.S. District Court
                         401 Courthouse Square
                         Alexandria, VA  22314
                         (703)501-1580

1                    (Thereupon, the following was heard in open

2     court at 2:11 p.m.)

3                    THE CLERK:  Criminal case 12-38, United

4     States of America versus Alafaka Patience Opuiyo.

5                    Would counsel please note their appearance

6     for the record.

7                    MS. HAYNES:  Patricia Haynes on behalf of the

8     United States.

9                    Good afternoon, Your Honor.

10                   THE COURT:  Good afternoon, counsel.

11                   MR. HISS:  Good morning, Your Honor.  Ron

12    Hiss on behalf of Ms. Opuiyo.

13                   THE COURT:  You have co-counsel with you

14    today?

15                   MR. HISS:  Your Honor, this is Mr. Hunter.

16    And I'm going to ask him to address the Court briefly on

17    the sentencing -- on our position paper because while

18    working with him, I found that he was far more capable of

19    arguing the one little technical part in our position

20    paper than I am.  And with the Court's permission, he's

21    faster and more eloquent than I am.

22                   THE COURT:  Are you co-counsel in this case?

23                   MR. HISS:  No, ma'am.

24                   THE COURT:  Well, Mr. Hunter, you're not an

25    attorney of record in this case, are you?

1   MR. HUNTER:  I'm not, Your Honor.  I was
2   brought in associated with Mr. Hiss to help with some
3   guidelines issues.  I met with him and the defendant to
4   discuss that and --
5   MR. HISS:  And if the Court would like me to
6   hand up a quick praecipe for this.  It's a five-minute
7   argument.  He's just better than I am.  And I just
8   learned --
9   THE COURT:  Well, I'm not going to have the
10  two attorneys arguing the sentencing issues.
11  Have a seat for a second.
12  Mr. Hiss, I'm assuming you had a time to go
13  over the presentence report and go over it thoroughly
14  with your client?
15  MR. HISS:  In detail.
16  THE COURT:  All right.  Are there any factual
17  corrections, changes, additions or deletions you want to
18  have made to the report as well?
19  MR. HISS:  No, ma'am.
20  THE COURT:  Then as you know, the Probation
21  Office has calculated the offense legal here as a level
22  18 and has given your client a criminal history of two.
23  The advisory guideline range that results
24  from that is a 30 to 37-month spread.  There's a one to
25  3-year period of supervised release, a fine range of

6,000 to $500,000 and a $100 special assessment.

And my understanding from your papers is you're not disputing the offense level. You are disputing the criminal history. You wanted the Court to use a criminal history one which would establish a guideline range of 27 to 33 months. And then in your paper, you are asking for a 10-month sentence split 5 months incarceration, 5 months community confinement.

MR. HISS: Yes, ma'am.

THE COURT: That's the position that you filed?

MR. HISS: Yes, ma'am. And the --

THE COURT: Go ahead.

MR. HISS: The only argument was the 27-month versus the 30-month. And Mr. Hunter, to his credit, and I know he's not a -- entered this case, explained it to me better than I can learn it. And I asked him if he would be willing to speak to the Court because frankly, I think he would do a better job than I do because I do so few sentencings over here and the Sentencing Guidelines are difficult for me.

THE COURT: All right.

MR. HISS: And I don't think the U.S. Attorney would have a huge argument.

THE COURT: Let me hear what Mr. Hunter has

1    to say.

2              Go ahead, Mr. Hunter.

3              MR. HUNTER:  Thank you, Judge.  Really, the

4    issue on criminal history comes down to a single count of

5    prosecution in the Baltimore County District Court.  It's

6    counted by the probation officer properly because the

7    guidelines have in 4(a)1.2(c)(1) where it lists several

8    crimes that would not normally be counted.  It's a

9    prostitution charge.  It's related to the instant offense

10   and so that would make it proper.

11             It would not ordinarily be counted under the

12   usual definition of conviction because there's never been

13   a conviction.

14             But under 4(a)1.1, the guidelines commission

15   has differentiated between diversionary sentences and

16   those were a judge hear facts and hears after a plea or

17   some factual finding or counted as convictions and those

18   like the DC prostitution charge that was also noted by

19   the probation officer are not counted because the

20   diversion happens before there's any -- any use of the

21   word "guilt".

22             However, even if it's counted by the Court as

23   one point, the addition of two more points under 4(a)1.2

24   we find to be onerous because the only requirement of the

25   Baltimore General District Court was that she pay $207.50

in fines and costs.

The Sentencing Guidelines Commission in their application notes -- notes that there has to be some sort of supervisory or custodial conduct by the government in this case.

Unsupervised probation could be enough. However, in order for the Court simply to pay a fine by itself would not be enough.

The only thing in the record, Judge, is that she was ordered to pay that fine which she did, and it was dismissed.

Bringing that up to three points would treat that non-conviction the same way that the Sentencing Guidelines would treat a conviction for a serious felony resulting in a prison sentence of 13 months or more.

The Sentencing Guidelines Commission understands and in their own application notes, this is an imperfect measure. They used the maximum penalty in each of these crimes and in assessing how they do this. And noting that it's imperfect, they encourage the Court to depart from the guidelines in certain circumstances.

We believe that this is one of those circumstances.

The other guideline issue that was difficult and novel under 2(g)1.1 adding five points for the

additional -- essentially treating underlying acts of prostitution -- of promoting a commercial sex act as counts of conviction for guidelines purposes drives the sentence from 12 months for an ordinary -- an ordinary conviction.

THE COURT:  That issue was not raised in Mr. Hiss's memo as I read it.  Was it?

MR. HUNTER:  It was not raised in his memo, Judge.

THE COURT:  Then it's not fair to the government to be bringing up that technical argument this late in the game.

MR. HUNTER:  We understand that, Judge.

We're simply noting that that was something that was difficult for counsel.  It was something that I did some research on and helped him with, and it more than doubled the sentence.

THE COURT:  All right.

MR. HUNTER:  Thank you, Judge.

THE COURT:  Ms. Haynes, you want to respond to any of that?

MS. HAYNES:  Your Honor, I assume the Court is not considering argument under 2(g)1.1.

THE COURT:  I don't think it's appropriate to be raising it that late.

MS. HAYNES:  Your Honor, I'm looking really at the 4(a)1.2 and more as a fairness issue and what's a fair thing to do in terms of concerning criminal history.

I frankly don't -- I can't get down to the weeds on this as much as Mr. Hunter has done.  But I think that she does have a history clearly of prostitution.  She continued engaging in prostitution when she was on probation.  So I think it is properly assessed.

That being said, you know, I do think that, you know, in the end, Ms. Opuiyo has been very cooperative in the case.  I think ultimately we're going to be back before the Court on a Rule 35.  I can't swear to that because I'm not able to do that.  But I think at some point we will be back before the Court.  And so at this point we would ask the Court to go ahead and assess the criminal history points as found in the presentence report.

THE COURT:  All right.  Well, there's a certain degree of -- and I've said this many times before, of artificiality in the guidelines which is why *Booker* is such a wonderful safety valve so to speak in this whole area of sentencing.

The decision by the Commission to treat dispositions before -- such as these deferred impositions

of sentence cases as part of criminal history does make good sense.

If somebody really feels that they're innocent, they shouldn't even accept those dispositions. The case ought to be fought. And my experience has been that diversion programs are simply a way of giving a person the ability to have a clean record and a clean start.

What is troubling about this defendant's criminal history and the government has pointed out both just now and in their papers is the defendant was arrested for sexual solicitation in November of 2008 and she had counsel during those proceedings and she got a diversionary sentence or diversionary treatment from the District Court and I think that was in District of Columbia, yeah. And she didn't get a criminal history point for that at all.

But you'd think she'd get a wake up call from that. And the fact that only a few months later, I mean I think it's 2 to 3 months later, on January 23rd, 2009, she's arrested for prostitution now in the District Court of Baltimore County, Maryland.

Again, she has counsel. Apparently she was advertising on Craig's List for prostitution services. And there was apparently a second count of prostitution

that had gotten nul prosed as part of that overall case. So there was obviously more than one instance.

And again the Maryland court gave her probation before a judgement of 18 months of unsupervised probation, a second wake up call.

And the problem in this case is that while she's ---during that period of unsupervised probation rather than getting the message that prostitution is against the law, she gets involved in this case.

So, whether using criminal history one or criminal history two, the only difference it makes is the guideline range. But in terms of an informed, rational sentencing decision in my view, it makes no difference.

The criminal history for a defendant is a very important 3553(a) fact because it indicates among other factors, the potential for recidivism.

And if -- and obviously, generous sentences or generous resolutions by other courts have not achieved a change in behavior by a defendant. Then my view is my job is to make sure that the next sentence she gets, the one she gets from this court is going to get her attention and make a reasonable shot at her not getting back involved in the same activity.

So, that's what this record tells me.

For purposes of the record, I'm not going to

change the calculations done by the Probation Office.  I
think there are sufficiently good grounds to leave them
as they are.

So, I will work from the guidelines as
calculated in the presentence report.  And my
understanding is that the government is asking for the
minimum sentence of 30 months.  Is that correct?

MS. HAYNES:  That's correct.

THE COURT:  All right, Mr. Hiss, I'll hear
from you.

MR. HISS:  Your Honor, now I can address the
sentencing in an area I'm considerably comfortable with.

This sentencing arm is a little difficult for
me in that I understand the government's -- strike that.
I understand the Court's allegation not only for --

THE COURT:  It's not an allegation.  It's a
concern.

MR. HISS:  Excuse me.

THE COURT:  It's not an allegation.  It's a
concern.

MR. HISS:  I understand the Court's concern.
I'm sorry I said allegation.

The Court's got to prevent this from
happening again.  There's got to be deterrence.  There's
got to be proper punishment.

And also, we want to address what may happen should she receive incarceration what happens when she gets out.

I'm going to leave my scripted argument because the Court was concerned, and I believe rightfully so, we certainly discussed this, the two prior prostitutions and then being involved -- she's pled guilty to money laundering -- being involved in a money laundering involving prostitution.

Two ways courts have to prevent that. The Court can hang a hammer over defendant, probation, jail. The Court can put her in jail and she -- assuming she can't commit the crime while no jail.

But I think the Court has a third avenue and that avenue is to allow the person to correct their life. And in this case, that's what I'm going to argue. It's a very small thing, but in this case, it's really lucky.

Most of the cases that I think this Court hears, the person gets convicted and after they're convicted they have very little chance of improving themselves once they get out of probation, incarceration, whatever.

And in this case, Ms. Opuiyo, when she made bond, one of the conditions that Judge Buchanan set was employment. She went out to where she had worked before.

They would not hire her because of this.

On her own, and I think she checked with her supervising pretrial officer, she went to a school. And it seems like a very small thing, but it turned out to be a very large thing. She went to professional bartendering school. And if I can pass this up.

THE COURT: I think it's sufficient. It's in the record.

MR. HISS: I believe it is. That has turned out to be a silver lining in this horrible cloud. She has been able to work as a banquet bartender and what's called a service bartender.

She's not at a bar doing a glamorous job like one might see at Clyde's or some bar in the metropolitan area. She's the one at the end of the bar. She's the one in the kitchen.

And I asked her this morning when briefing this, I said a couple of hundred drinks? She laughed at me and said 4 or 500 drinks. It's grueling hard work. It has to be done right because people are a little picky. But she is able to do this. She's taken her training.

She's now taking her experience. She's leveraged that where she can make 3 or $400 a night and be employed steadily.

We're looking at a person that can make 60, $70,000 a year until such time as she can't bartend any more.

Out in the public, bartenders that work bars have a tendency to get in a little trouble. Bartenders that sit in the kitchen and bartenders that do banquet and do the physical work -- she doesn't dress up or anything. She's in a work outfit, and can make that kind of money, gives this Court the security to know that when she's finished whatever this Court decides to do, she's going to be able to make a living, pay her fines, be a productive member of society.

The reason she got involved in prostitution in the first place and got sucked back into it is because she needed to make money. She's well educated. She's got a public relations company that wasn't making any money and she got sucked into it and I don't have any other way to describe other than that.

I'd like the Court to consider not only the punishment, which she's now a convicted felon. I'd like this Court to remember that's a very serious thing.

For the rest of her life forever, she'll be a convicted felon. And anyway you cut it, no matter how much we try to do to say we help these folks that are convicted felon, she's a second class citizen forever.

That's a huge punishment.

The monies have been taken away.  These were money crimes.  The money is the goal.  The best way to punish a money crime has always been in my opinion, take the money away.

Now we've got to address the fact would she go back into prostitution?  And I think she now has the avenue out of prostitution.  And I think that's something the Court should really consider when applying this sentence.

My position papers remain the same.  I'd ask the Court to consider every way possible to let this woman continue to work.

I think the Court will be pleased that they've taken somebody that is run down a bad path, someone who's dimmed their future by their acts.  And there's no other way to put it because now she's a convicted felon.  She's got this.  It's going to be an anchor on her forever.

But she's taken herself, lifted herself up by her own booth straps during the pendency.  She did it quickly during the pendency of this prosecution because she couldn't get any other job, stumbled upon this, and it has turned out to be a silver lining in this terrible cloud.

I'd ask the Court to consider that and seriously consider it. The punishment is more than sufficient to prevent her or anybody else that might think about doing this. She's a convicted felon. She's been prosecuted by the Eastern District of Virginia. She's subject to incarceration. And all the proceeds she had is gone.

And I'm sure the Court's read all this and the facts. She took money, collected money at the direction of her, whatever he was, and put it in his bank accounts.

She lives very sparsely as the Court may or have not picked up on. She had two vehicles that were forfeited. In fact we signed the forfeiture orders this morning when we walked into court. She's got nothing to show for it.

But she does have an opportunity now, an opportunity never to be before this court or any other court, an opportunity to be a productive member of society, an opportunity to make a decent living.

This is not somebody who is going to be out there scratching around trying to make 12, $15,000 a year who is likely to fall back into drug distribution or prostitution or anything for easy money. She can now make some real serious decent money.

I'd ask the Court to truly consider that and
sentence appropriately, give the consideration to my
position paper that I was so graciously helped by
Mr. Hunter.

THE COURT:  All right, thank you.

Ms. Opuiyo, if you'll come up to the lectern.
This is your chance to say anything you'd like to say
before sentence is imposed.

MS. OPUIYO:  I want to say I'm very
remorseful, just that I had to stand before you in this
capacity.  It's a very sad day in my life.

You brought a very valid point that I should
have woke up.  And I didn't.  And I just ask for the
mercy of the court.

THE COURT:  All right.  Well, I do find that
a variant sentence is appropriate in this case.

Stay there, Ms. Opuiyo.

MS. OPUIYO:  I'm sorry.

THE COURT:  A variant sentence is appropriate
in this case because of the post arrests efforts at
rehabilitation.  Again, all that's in your favor.

The problem I have, of course, it's only been
a couple of months.  I don't know if it's going to stick
or not and that's the thing we never know for certain.

A sentence of incarceration, however, is

necessary in this case in part, again, because of the
record which you do present as well as the Court has to
send a clear message to others, because this kind of a
crime is a crime that is a conscious crime.

People do it for money or sometimes there are
other reasons.  But you have to send a message to folks
if you're going to engage in this kind of conduct.  As
long as this conduct is illegal, there are prices to be
paid.

I think given the fact that you have made
such an effort to get some other kind of employment and
the fact that you did not have a managerial role but you
had set up this organization yourself, I'm going to give
you credit for that and order that a variant sentence of
20 months in the custody of the Bureau of Prisons with
credit for any time you've served be imposed today.

That 20-month sentence will be followed by
two years of supervised release.

Now, the terms and conditions of supervision
are first of all, your uniform good behavior.  That means
you cannot violate any federal, state or local laws while
on supervision.

Do you understand that?

MS. OPUIYO:  Yes, I do.

THE COURT:  Secondly, you have to follow all

the conditions of supervision that will be explained on
the judgment order and explained to you by the Probation
Office.

Do you understand that?

MS. OPUIYO:  Yes, I do.

THE COURT:  Now, as a special condition of
supervision because of your mental health history, I want
to make sure that you get adequate mental health
evaluation.  And if the evaluation indicates that you
need treatment, then such in or out-patient treatment
including the taking of any medication or therapy as
directed.

Do you understand?

MS. OPUIYO:  Yes, I do.

THE COURT:  I find that you should have
enough resources to pay at least a portion of that.

But if the Probation Office finds that you
cannot pay all the cost, I don't want money to be a
factor that prevents you from getting the necessary
mental health treatment.

Do you understand that?

MS. OPUIYO:  Yes, I do.

THE COURT:  You'll have to waive any privacy
rights that you have to the mental health records so that
the Probation Office can monitor your compliance with any

mental health concerns.

Do you understand?

MS. OPUIYO:  Yes, I do.

THE COURT:  In addition, I'm going to require that you give up any privacy rights that you have to your financial records.  I want the Probation Office to be able to monitor your work revenue, make sure you're paying your taxes, make sure that there aren't any unexplained sources of income that might suggest that you're doing something other than legal work.

You understand that?

MS. OPUIYO:  Yes, I do.

THE COURT:  There is no history of drug abuse in this case so the mandatory drug testing is waived. However, the Probation Office can require a drug test from you at any time and you must comply.

Do you understand that?

MS. OPUIYO:  Yes, I do.

THE COURT:  Are there forfeiture orders?

MS. HAYNES:  Yes, there is.

THE COURT:  All right.  Let's hand those up.

In light of the forfeiture orders and your overall financial situation, I do not find you have sufficient resources to pay the cost of incarceration, any other costs of supervision or the statutory fine.

But the special assessment of $100 must be paid.

Another consent order of forfeiture under that order, you are giving up any property interest or rights that you have in a 2008 Honda Accord as well as $21,410 that was seized from you on January 26, 2012.

And I see that you have signed that order.

This appeal -- do you agree that's what you've agreed to give up?

MS. OPUIYO:  Yes, I have.

THE COURT:  All right.  Were you forced or pressured in any respect into making that decision?

MS. OPUIYO:  No, I was not.

THE COURT:  Then I'm going to go ahead and sign it today.

Now, because there's been no problems on bond, I assume the government is not opposing self surrender.

MS. HAYNES:  No, Your Honor.

THE COURT:  All right.  I'm going to allow you, Ms. Opuiyo, to stay out on your current bond which means you'll have a few more weeks when you can continue to work and get your life in order and perhaps before that is over, the Rule 35 motion, if it's coming will be filed.

The conditions of your bond remain intact

exactly as they currently are with the additional
condition that when you are notified by the U.S. Marshal
where to report and when, you must get yourself to the
facility.

Do you understand that?

MS. OPUIYO:  Yes.

THE COURT:  Your failure to report can be
treated, number one, as a new crime of escape and number
two, would also violate the conditions of your bond and
would subject you to being prosecuted for bond jumping.

Do you understand that?

MS. OPUIYO:  Yes.

THE COURT:  Is there a recommendation that
you want for geographical designation?

MR. HISS:  Alderson or Hazelton.

THE COURT:  FCI.

MR. HISS:  I believe that's in the position
paper.

THE COURT:  All right, Alderson or Hazelton.

When you leave court today, you need to take
your client to the Marshal Service because she's going to
be a self surrender to Pretrial because her bond is being
continued.

And Ms. Moran from the Probation Office is
here as well.

1          Thank you.  You're free to go.

2          (Proceeding concluded at 2:35 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, Renecia Wilson, an official court
reporter for the United State District Court of Virginia,
Alexandria Division, do hereby certify that I reported by
machine shorthand, in my official capacity, the
proceedings had upon the sentencing in the case of United
States of America v. Alafaka P. Opuiyo.

I further certify that I was authorized and
did report by stenotype the proceedings and evidence in
said sentencing, and that the foregoing pages, numbered 1
to 23, inclusive, constitute the official transcript of
said proceedings as taken from my shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed
my name this  22nd  day of  October , 2012.


                            /s/
                   _____
                   Renecia Wilson, RMR, CRR
                   Official Court Reporter